FRY V. STATE







NO. 07-09-0053-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 25, 2009
______________________________

DEVON ROYAL JONES,

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS,

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 251st DISTRICT COURT OF POTTER COUNTY;

NO. 18880-C; HON. ANA ESTEVEZ, PRESIDING
_______________________________

ORDER OF DISMISSAL
_______________________________

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.



Â Â Â Â Â Â Â Â Â Â Appellant, Devon Royal Jones, appeals his conviction for capital murder. The
certification of right to appeal executed by the trial court states that this âis a plea bargain
case and the defendant has NO right of appealâ and âthe defendant has waived the right
of appeal.â This circumstance was brought to the attention of appellantâs counsel and
opportunity was granted him to obtain an amended certification entitling appellant to
appeal. No such certification was received within the time we allotted. Having received
no amended certification, we dismiss the appeal per Texas Rule of Appellate Procedure
25.2(d).
Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Per Curiam

Do not publish.



















ost favorable to the decision of the trial court (as we
must under In re C.H.), we find that the record contains the following evidence. C.C.S.
believes herself to be "King Cyrus" and the daughter of God (or the female counterpart to
Jesus Christ). So believing, she began disposing of earthly possessions in preparation
for her family's journey to the Kingdom of God or Heaven. Furthermore, this kingdom was
not of this earth but of another realm, C.C.S. informed others. Moreover, she told her
mother that she (C.C.S.) and her four children were soon to go to that kingdom; at one
point she uttered that it would be "at the end of [the] month." This led to her disposition
of the aforementioned possessions. The latter included not only her clothes and the family
computer but also the clothes and winter coats of her children, family pictures, and
children's sport trophies. (2) Her preparation also involved the removal of her four school
aged children from school. (3) Indeed, prior to the transfer of their custody to their
grandparents (via court order issued within a month of the commitment trial), the four
children had been absent from school for approximately seven months. 

 Also appearing of record is evidence that one of the four children developed a
cavity "so severe that it went into the roots" of the tooth. This condition existed for
"probably eight to nine months" before the child was taken to a dentist. The individual who
eventually took the child to the dentist was not C.C.S., but her brother. C.C.S. did not do
so, according to her brother, since she "didn't believe in doctors." Instead, she opted to
treat the cavity by "put[ting] vinegar on it." 

 Intentionally selling the clothes of one's child (especially winter coats in the North
Panhandle region of Texas where winters often get cold), depriving them of medical care,
denying them an education, and uttering that the children will soon be journeying to the
Kingdom of God is some evidence upon which a factfinder could reasonably form a firm
belief or conviction about the truth of the State's allegations. It is some evidence on which
a factfinder could reasonably form a firm belief or conviction that C.C.S.'s mental illness
was likely to cause serious harm to others per §574.034(a)(2)(B) of the Texas Health and
Safety Code. Moreover, these acts were overt and recent and tended to confirm the
likelihood of serious harm to others, as required by Â§574.034(d). That C.C.S.'s parents
were granted custody shortly before trial does not change this for several reasons. First,
the extent and duration of that grant was not explained. So, nothing of record indicates
that she will not have access to them. On the contrary, evidence appears of record
illustrating that she and her husband were to have access to their offspring via supervised
visits. Moreover, those visits are supervised, according to C.C.S., because she voiced that
she (and her husband) "might try to take them and take them away and get out of this
place, and get away . . . ." In short, evidence appears of record suggesting that she may
still pose a threat to them even though they are in the custody of others.

Issue Two


 Via her second and final issue, C.C.S. contends that the trial court erred in ordering
the administration of psychoactive medication because there was no evidence supporting
her temporary commitment to a mental health facility. That is, she solely based the
success of her second issue upon the success of her first. Because we overruled the first,
the foundation underlying her second is non-existent. Thus, we overrule it as well. 

 Having overruled both issues raised by C.C.S., we affirm the order of the trial court.


 Brian Quinn

 Justice 

 

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. Â§75.002(a)(1) (Vernon Supp. 2003). 
2. The family pictures and those of her children were believed by her to be forms of idolatry.
3. The children apparently ranged in age from ten to 16

 at the time of their removal from school. And, though C.C.S. mentioned that she desired to home-school
them, she did not do so.